CHEHARDY, Judge.
Plaintiff, Joseph Lytell, appeals a district court decision in favor of defendants Donald Hushfield, Theodore P. (Ted) Gauchen, Donald Larouse, A. C. Wilson, and Kenneth Cole dismissing the plaintiff’s suit against these executive officers of the company for which he worked, at his costs.
In his written reasons for judgment, the trial judge stated:
“The testimony leaves no doubt in the Court’s mind that petitioner had complete and full knowledge of the equipment he was using and assumed the risk of its operation, and even if the Court would not have reached this conclusion, there is ample proof in the record that with the full knowledge and experience petitioner had in his position as forklift operator, he would have been contributionly [sic] negligent in operating the machine in the manner he did on the date of his injury.”
We agree. The plaintiff, a forklift operator, was injured on the night of January 5, 1975, while he was working on the midnight shift at Strickland Transportation Company, Inc. At the time of the accident, Lytell *233 was 51 years old and had been employed for some 17 years at Strickland, during which time he had received several safety awards. He had been working the same forklift for approximately four to five years before the accident, and was a “bidded” operator on that lift for several years prior to his injury.
There were no witnesses to the accident in question, however, the plaintiff testified that at approximately 3 a. m., Hushfield, the midnight dock foreman, asked him to pick up some crates from a particular trailer and set them on the dock, noting that “J” section had been cleared by Hushfield for that purpose and pointing out the door of the trailer that Lytell was to unload.
In describing what happened next, the plaintiff said:
“ * * * I proceeded that way and I opened the blades on the forklift and I picked up these creates on the back end of the trailer. They were approximately seven foot high. I picked them up and they were approximately the width of the trailer. And I picked up the first set backed up, went around and raised it up to a fair height to J Section where I was instructed to put the crates and went back to J Section and got the rest of them, came out with the boxes and I was backing up and I had to turn around and drop these crates next to the other ones and when I was lowering the boom,— loading the freight down to the floor, one of the blades disengaged as I was coming down and the top box fell backwards as I was sitting on the seat and I said oh, God, look out. I jumped off the lift machine. I landed on my back and my neck and I think it was Freddie and Mex LaBruno I had got up and he said what happened. I said this crate fell back on the lift machine and I thought it was going to hit me so I jumped off the lift. He said are you all right? I said well, I don’t know my back and my neck hurt. He said do you need any help. I said no, I believe I’ll make it. So, I was kind of in a daze and I walked around a minute or so, and then Donald Hushfield came by and he said what happened. I said I took those crates off and I put them in J Section like you told me and the crate — one of the crates fell back towards me and to keep from getting killed, I don’t know what was going to happen. The crates were pretty heavy. I jumped off the machine and I hit some other freight that was on the side of the dock.
There was a tremendous amount of testimony from coemployees of Lytell establishing that the forklift machine, the only one owned by Strickland’s New Orleans terminal at that time, was in very poor condition because it leaked oil on the floor of the dock everytime it was stopped, was not equipped with lights or a horn, contained no counterweight on the back and there were no safety catches on the bolts that held the lift blades in place, resulting in the blades sliding or coming off the machine during its use by operators. Furthermore, there was no overhead guard to protect the driver from being hit by falling freight that exceeded the height of the boom and the machine was always very dirty. Many of these unsafe factors of the condition of the machine, moreover, were in direct violation of occupational safety and health standards as proposed by the Occupational Safety and Health Administration of the Department of Labor.
Although the plaintiff testified that he really did not know what he slipped on when he jumped from the lift, other employees testified that there was oil near Lytell after the accident, and one witness described Lytell as being “stooped” in the oil after his injury.
Employees of Strickland also said at trial that a substance called “dry-zit” was used by the men to soak up the oil spills; however, a safety expert testified that the product would only improve safety of working conditions if it were properly used and swept up after it absorbed the oil; otherwise, it would be like putting sand on the dock, which would make it slippery.
It was also established at the trial court that no regular safety meetings were held for the workers at Strickland, that no maintenance schedule was followed on the lift *234 machine and that the men frequently complained to the defendants about the condition of the machine but the problems were not rectified.
The plaintiff’s safety expert testified there is no problem with using a forklift without an overhead guard so long as the driver does not lift loads that are higher than his head. In describing his load at the time of the accident, however, Lytell said that it consisted of five or six crates, stacked one on top of another on a pallet, that they were approximately 7 feet wide and 15 inches high and, together, they reached a height of approximately 7 feet. He stated that the total load was over the height of the boom.
Lytell and coemployees testified at trial that if they had refused to work under unsafe conditions at Strickland, they would have been fired or sent off the job. Although defendants contended in their testimony that they told the men ujing the lift not to exceed the height of the boom, they were aware that the men actually did so. Although there was a sign on the dock that said “High and Tight” there was testimony from the men that this had to do with the way the freight was stacked in the trucks, but that there was nothing said about stacking the freight high on the docks. In fact, Gauchen, who was operations manager at Strickland at the time of the accident, testified that he was constantly telling the plaintiff not to stack the boxes so high on the dock because he would get complaints from another forklift operator on another shift who was afraid to take the boxes down.
The plaintiff also produced an interoffice communication to terminal managers and staff at Strickland, with forklift instructions and certification form, directing that each individual responsible for operating a forklift read and sign a copy of these instructions, as required by the Occupational Safety and Health Act; however, the forklift operators at Strickland’s New Orleans terminal testified they were never presented with these forms and instructions.
The plaintiff contends on appeal that he was not contributorily negligent because to refuse to work under unsafe conditions would have caused him to be dismissed from the job or be fired, citing Chaney v. Brupbaeher, 242 So.2d 627 (La.App. 4th Cir. 1970). In that case, the court said at 632:
“We therefore turn to the question whether Chaney’s mere working under the known unsafe conditions was itself contributory negligence.
“The test for negligence is reasonableness. While it may be true that the reasonable man would wish to avoid the known risk here, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to loss of his job, his means of support for self and family. It would not have helped Chaney to point out the danger to Owens, because Owens already knew it. Nor could Chaney tell Owens how to run the job. It cannot be fairly said that Chaney elected to work under the dangerous conditions (the danger not being an intrinsic feature of Chaney’s work). Thus as we see the question, it is whether the reasonable laborer (with a wife and three children to feed, clothe and house) would quit his job or expose himself to being fired, without any immediate prospect of another job, rather than work in the presence of a danger which his job did not necessitate and which he had never previously been called on to tolerate. We simply cannot answer that question affirmatively. We believe Chaney’s conduct measured by the reasonable man standard was not negligent, and the defense of contributory negligence therefore falls.”
Defendants, however, cite the case of Miller v. Employers Mut. Liability Ins. Co., 349 So.2d 1353 (La.App. 2d Cir. 1977), wherein the court discussed the criteria for determining whether an employee is guilty of contributory negligence. After taking note of Chaney v. Brupbacher, supra, that court said at 1362:
“On the other hand, there are cases in which an employee’s contributory negligence has been held to bar recovery *235 against a supervisory co-employee or executive officer. See Laborde v. Martin, 316 So.2d 437 (La.App. 3d Cir. 1975) and Richardson v. Heyd, 323 So.2d 507 (La.App. 4th Cir. 1974). In these cases, the employee was found to have had sufficient knowledgeable control over his situation at the time of the injury to make an evaluation of his conduct, a pertinent factor in considering negligence which contributed to cause the harm. Other cases have held that an employee who exposes himself to a known danger assumes the risk of such exposure and is guilty of contributory negligence if he suffers injury as a result thereof. Swilly v. American Fire & Casualty Company, 148 So.2d 157 (La.App. 1st Cir. 1962); Spears v. American Fidelity & Casualty Company, 123 So.2d 513 (La.App. Orl.1960); Pfister v. Phoenix of Hartford Insurance Company, 290 So.2d 362 (La.App. 4th Cir. 1962).
“Emerging as criteria for determining an employee’s contributory negligence are: (1) relative knowledge ol the danger by the supervising employee and the injured employee; (2) relative control over the employee’s situation; (3) the degree to which the employee’s conduct is voluntary on his part; (4) alternatives available to the employee; (5) obviousness of the danger; and (6) relative ability to eliminate the danger.”
In the present ease, applying the above criteria, this court holds that it was obvious to the plaintiff, by his own admission, that the load he was carrying at the time of the accident exceeded the height of the boom. In spite of the fact that he had not actually had formal safety instruction in the use of the machine, it would be obvious to any reasonable man (and certainly to one of the plaintiff’s experience in such operations on the defective machine) that by carrying such a load of such height on a machine being operated without a headguard, and with the added danger of the blades slipping or disengaging at any time, he was placing himself in danger of being struck by one of the crates falling.[1] Although it was established that the defendant foreman told Lytell to move the crates with the lift machine, it was not established that he was required to move them in exactly the manner in which he did, i. e., in loads which either exceeded the height of the boom at all times it was on the forklift or when he raised it to go around other freight in the area. Moreover, the evidence does not indicate that the instructions given by Hush-field to Lytell about moving the load to “J” section included any directions about the manner in which the load was to be moved. If the loads, as they were stacked on the truck, exceeded the height of the boom on the machine, certainly the operator, Lytell, was in as good or better position than the foreman to notice this and at least make some effort to remedy the situation or call the problem to the attention of Hushfield and ask that he remedy the problem in some way. Since the record indicates that Lytell made no effort in these respects on behalf of reasonable self-protection, he cannot be heard now to complain that he had no options of safer methods of moving the load available to him or that he was required to move the load in the manner that he did or be fired.
Contributory negligence is a question of fact to be determined by judge or jury, and a reviewing court should not disturb such factual determinations in absence of manifest error, and in order to find manifest error, the record must support the conclusion that a factual determination was clearly wrong. Skinner v. Nightingale, 377 So.2d 1348 (La.App. 1st Cir. 1979). Also, a court of appeal is not entitled to substitute its finding of fact for reasonable evaluation of credibility and reasonable inferences of fact made at a personal injury trial. Pierre v. Landry, 341 So.2d 891 (La.1977). In view of the above, and in view of our own conclusions reached after review of the record, we can find no basis sufficient to disturb *236 the district court’s determination that the plaintiff was contributorily negligent in his operation of the machine at the time of his accident and that such operation was a proximate cause of his injury.
Neither is the court impressed with the plaintiff’s attempt to invoke the doctrine of sudden emergency. Even if the falling box caused an emergency situation at that point, the doctrine is not available to a plaintiff, like Lytell, who creates the situation through his own negligence, i. e., carrying a' load which exceeded the height of the boom. Simms v. Estridge, 346 So.2d 300 (La.App. 4th Cir. 1977).
This court also rejects the plaintiff’s attempt to invoke the doctrine of last clear chance to overcome his contributory negligence, because for this doctrine to be applicable the litigant relying thereon has the burden of establishing, by a clear preponderance of evidence, that he was in a position of peril of which he was unaware or from which he was unable to extricate himself. Barthelemy v. Phoenix Insurance Co., 226 So.2d 603 (La.App. 4th Cir. 1969). In the present case plaintiff did not establish through his testimony that he was unaware that the load he was carrying exceeded the height of the boom or that, although he was aware of that fact, he could not extricate himself or remedy the situation before the accident occurred.
The trial court has wide discretion in assessing costs. Green v. Orleans Parish School Bd., 365 So.2d 834 (La.App. 4th Cir. 1978). The plaintiff has failed to show that there was any abuse of discretion on the part of the district court in this respect.
Accordingly, the trial court judgment is affirmed.
AFFIRMED.
STOULIG, J., dissents with written reasons.

. The record establishes that the boxes were banded together on the pallet. However, there is nothing in the record to indicate that plaintiff could not have removed the band and thus have lessened the height.