408 So.2d 1344 (1982)
Joseph LYTELL
v.
Donald HUSHFIELD, Ted Gauchen, Donald Larouse, A. C. Wilson, Kenneth Cole and Allis-Chalmers Manufacturing Co.
No. 81-C-2117.
Supreme Court of Louisiana.
January 25, 1982.
Rehearing Denied February 19, 1982.
*1345 Bernard S. Smith, Covington, for plaintiff-applicant.
James L. Donovan, of Donovan & Lawler, Metairie, for defendants-respondents.
MARCUS, Justice.
Joseph Lytell instituted this action against Donald Hushfield, Ted Gauchen, Donald Larouse, A. C. Wilson and Kenneth Cole[1] as executive officers of Strickland Transportation Co., Inc.,[2] Transport Insurance Company and Allis-Chalmers Manufacturing Company[3] to recover damages for personal injuries sustained in an accident that occurred on January 6, 1975, while in the course and scope of his employment with Strickland. Strickland intervened as a party plaintiff to recover workmen's compensation benefits paid to plaintiff.
*1346 After trial on the merits, the trial judge rendered judgment in favor of defendants and against plaintiff dismissing plaintiff's suit at his cost. In his written reasons for judgment, the judge stated that plaintiff's claim for damages was barred either because he assumed the risk of injury or was contributorily negligent. The court of appeal affirmed with one judge dissenting.[4] On application of plaintiff, we granted certiorari to review the correctness of that decision.[5]
The record establishes the following facts. Joseph Lytell, a 51-year-old man who had been employed by Strickland for sixteen years at its New Orleans terminal, was a forklift operator on the 12:01 a. m. to 8:30 a. m. shift. His job basically involved unloading freight from inbound trucks and then loading it onto smaller trucks (called bobtails) for local deliveries. At about 3:00 a. m. on January 6, 1975, his foreman, Donald Hushfield, instructed him to unload some freight from a particular truck and locate it in "J" section of the terminal building. Plaintiff testified that he opened the blades of the forklift, proceeded to the truck and picked up the freight. The load consisted of five or six crates, each measuring 15 inches high by 7 feet wide, on a pallet. The height of the load (about 7 feet) was somewhat higher than the boom of the forklift. Lytell had to raise the load in order to clear some crates that were stacked on the apron of the dock on his way to "J" section. As he began to lower the load, the right forklift blade disengaged, causing the top crate to fall backward toward him. Lytell, realizing that there was no overhead guard (or "headache rack" as it was also called) on the machine, jumped out of the driver's seat to avoid being crushed. He landed on some oil that had leaked from the forklift, slipped and fell on other freight on the dock and sustained injuries to his neck and back as a result thereof.
The testimony clearly establishes that the forklift was old (at least ten years) and had been plagued with problems for a long time prior to plaintiff's accident. It was the sole forklift available for use. The machine had a history of oil leaks. Also, there was no latch assembly to prevent the blades from shearing off the retaining screws and then coming loose or even falling out. Instead of replacing the safety latch with one available for thirteen dollars from the manufacturer, ordinary bolts were used which fell out when there was excessive vibration.[6] Likewise, the forklift did not have any sort of cage or overhead guard to protect the operator from falling freight.[7] Overhead guards were available from the manufacturer. The explanation for why there was no overhead guard on the forklift was that the added height of the overhead guard prevented the forklift from being used in the bobtails. An alternative to using a forklift without an overhead guard in the bobtails would have been to acquire a smaller forklift or hand jacks. This would have, however, increased the time in loading and unloading the bobtails.
Lytell and other co-employees had called these defects to the attention of management but nothing had been done to correct the problems. Defendants admitted that they had knowledge of the complaints concerning the forklift. Plaintiff and other forklift operators testified that they were never told not to load the forklift above the height of the boom. As a matter of fact, it *1347 was common procedure to do so. There was a sign hung over the dock which read "high and tight." Carrying too much at one time was not the only cause of having freight above the boom of the forklift. It was often necessary to raise the load up to get around other freight located on the dock and in the terminal building.
Donald Larouse was the terminal manager at the time of the accident and was in charge of Strickland's New Orleans terminal. He could hire and fire employees, order repairs on equipment and was responsible for safety. Theodore Gauchen was the operations manager of the terminal and exercised managerial authority. In Larouse's absence, he was in complete charge. Donald Hushfield was the dock foreman for the shift plaintiff was working on at the time of the accident and was responsible to Gauchen and Larouse. Hushfield had the authority to send any worker off the job for failing to comply with his instructions. A. C. Wilson was a field safety manager for Strickland at the time of the accident and, while his office was located in Dallas, Texas, the New Orleans terminal was part of his territory. It was Wilson's job to visit various terminals and see that the operations were being safely conducted. Kenneth Cole was the company's director of insurance and had authority to require accident reports and investigate accidents.
The sole issue presented for our determination is whether defendants as "executive officers" of Strickland are liable to plaintiff for damages sustained by him as a result of the accident on January 6, 1975.
In Canter v. Koehring Company, 283 So.2d 716 (La.1973), we laid out the following criteria for imposing individual liability on an executive:
1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstanceswhether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of the duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.
See also Pisciotta v. Allstate Insurance Co., 385 So.2d 1176 (La.1980) (on rehearing).
In order to determine whether the executives in this case are individually liable to plaintiff under the above criteria, we must examine the specific facts involved here.
The principal or employer, Strickland, was under a duty to provide its employees with a reasonably safe place to *1348 work.[8] This would include equipment used in connection with that work. In this case, the duty was delegated to Wilson, Larouse, Gauchen and Hushfield. Wilson had responsibility for the overall safety at the New Orleans terminal as well as other terminals within his territory. On the other hand, Larouse, Gauchen and Hushfield had the responsibility on a daily basis to see that the employees were provided with a safe place to work, including equipment used to do that work. The evidence is clear that they, unlike Wilson, were well aware of the problems in connection with the operation of the forklift. The duty to provide its employees with a safe place to work had not been delegated to Cole. Hence, he cannot be held liable to plaintiff.
Next, we must determine whether Wilson, Larouse, Gauchen and Hushfield breached the duty through "personal fault." We are unable to find that plaintiff's accident was caused through the personal fault of Wilson. Although this executive had general responsibility for safety of the employees at the New Orleans terminal, he had delegated this responsibility to Larouse, Gauchen and Hushfield and there was no showing that the delegation was without due care. On the other hand, Larouse, Gauchen and Hushfield were on the job on a daily basis and had ultimate responsibility for ensuring plaintiff a reasonably safe place to work, including safe equipment to perform that work. Finding that these defendants had full knowledge of the defects in the forklift and did nothing to correct them, we have no hesitation in concluding that they breached the duty owed to plaintiff through their "personal fault" which was the cause of the accident for which damages are being sought.
Finally, defendants contend that plaintiff's claim should be barred either because he assumed the risk of injury or was contributorily negligent.
We stated in Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971):
The determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard.
It is fundamental that, in order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm. Plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk. Dofflemyer v. Gilley, 384 So.2d 435 (La.1980); Prestenback v. Sentry Insurance Co., 340 So.2d 1331 (La. 1976); McInnis v. Fireman's Fund Insurance Co., 322 So.2d 155 (La.1975); Brantley v. Brown, 277 So.2d 141 (La.1973); Langlois v. Allied Chemical Corp., supra. Assumption of the risk and contributory negligence are affirmative defenses that must be specially pleaded. La.Code Civ.P. art. 1005. The burden of proving these defenses is on the defendant. Dofflemyer v. Gilley, supra.
Defendants argue that Lytell assumed the risk because he "knowingly" continued to work on the "obviously" unsafe forklift and was contributorily negligent because he was carrying a load that exceeded the height of the boom of the forklift at the time of the accident. While the record reveals that Lytell was aware of the various defects in the forklift, he did not know or understand the risk involved nor did he accept the risk as well as the inherent possibility *1349 of danger because of the risk. Plaintiff had operated this machine for many years without injury. Hence, we conclude that he did not assume the risk. Certainly, he was unaware of the oil on the dock where he slipped after jumping off of the forklift. We also reject defendants' contention that plaintiff was contributorily negligent. It was common practice to load the forklift higher than the height of the boom. Defendants were well aware of this fact. At the time of the accident, plaintiff was carrying freight from the truck to the "J" section of the terminal building on instructions from his foreman and was in the process of lowering it after having raised it to get around other freight on the dock. We consider that the conduct of plaintiff under these circumstances was reasonable.
In sum, we find that defendants Donald Larouse, Theodore Gauchen and Donald Hushfield as "executive officers" of Strickland Transportation Co., Inc. are liable to plaintiff for damages sustained by him as a result of the accident on January 6, 1975. The trial judge was clearly wrong in barring plaintiff's claim for damages either because he assumed the risk of injury or was contributorily negligent. The court of appeal erred in affirming this result. We must reverse. Because the court of appeal did not address the issues of the amount of plaintiff's damages, insurance coverage, or the intervenor's claim, we consider it more appropriate to remand the case to that court for it to determine and decide those issues.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings not inconsistent with the views herein expressed.
LEMMON, J., concurs.
WATSON, J., concurs in the result.
NOTES
[1] Kenneth Cole, a non-resident, died after being served and filing an answer to the petition. Prior to trial, on motion of plaintiff, the court ordered the issuance of a summons, with publication according to law, to the legal successor to appear and substitute himself for Kenneth Cole within sixty days of the first publication. Subsequently, an attorney at law was appointed to represent the legal successor.
[2] This cause of action arose before La.R.S. 23:1032 was amended by Act 147 of 1976 restricting "executive officer" suits in civil cases to claims of liability resulting from an "intentional act."
[3] Prior to trial, on application of plaintiff, judgment was rendered dismissing Allis-Chalmers Manufacturing Company from the case.
[4] 400 So.2d 231 (La.App. 4th Cir. 1981).
[5] 406 So.2d 606 (La.1981).
[6] Two of the most common sources of vibration were cracks in the dock and the procedure used in getting the forklift out of the bobtails. Because the forklift was so heavy, when it was driven into a bobtail, the level of the truck would fall below that of the dock. To get out, the forklift operator had to get a "running start." Testimony establishes that it was common for the bolt to fall out during this maneuver.
[7] Additionally, there was testimony that the machine was almost always dirty, did not have headlights or a horn and was operated without its counterweights on the rear.
[8] La.R.S. 23:13 provides:

Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations.