579 So.2d 458 (1991)
Mrs. Georgia Parker HAMPTON, Individually and as Natural Tutrix of Marge Lynette Hampton
v.
RUBICON CHEMICALS, INC., et al (Two Cases).
Nos. 90 CA 0815, 90 CA 0816.
Court of Appeal of Louisiana, First Circuit.
March 28, 1991.
Rehearing Denied May 20, 1991.
*460 Bruce MacMurdo, Baton Rouge, for plaintiff-appellee, Georgia Parker Hampton, etc.
Steve Mayer, Baton Rouge, for defendant-appellee, Mary Louise Roberts Dyason.
Boris Navratil, Baton Rouge, for defendants-appellants, Lindell Armstrong and Fireman's Fund Ins. Co.
Before LOTTINGER, SHORTESS and CARTER, JJ.
CARTER, Judge.
This case arises out of the following set of facts. Mack Hampton worked as a maintenance laborer for Barnard & Burk, Inc. (B & B), which had a contract with Rubicon Chemicals, Inc. (Rubicon), to maintain Rubicon's production facilities at its Geismar plant. Hampton's job involved the cleanout and repair of equipment of a three-story plastics production rig, known as the MDI unit.
*461 At that time, Dean Armstrong was the supervisor of the work which Hampton and his co-workers performed. He was the management employee who was the most involved with supervising B & B's operations at Rubicon's Geismar plant. Armstrong, as the immediate supervisor, was responsible for the day-to-day operations, worker training, and the conduction of safety programs. Over Armstrong was John Daniel, a senior executive officer for B & B, who was charged with the overall safety of B & B's operations. At the time of the accident, Fireman's Fund Insurance Company was the liability insurer of B & B and its executive officers.
At about 5:15 p.m. on January 29, 1974, Hampton and his co-workers were cleaning the area around the MDI unit, when a phosgene leak occurred, through the fault of Rubicon. Phosgene, commonly known as "mustard gas," is a highly toxic gas, which is used in the production of plastics. Phosgene has an almost sweet odor; it desensitizes one's sense of smell so that one may continue to breathe it without being aware of the extent of his exposure. Because it has a low solubility, the gas does not have an immediately irritating quality that other toxic gases have.
Hampton and several of his co-workers were exposed to phosgene for about ten minutes. Because of this exposure, Hampton and his co-workers were taken to the first aid station within the plant. No doctor was available, and they were given minimal, if any, medical treatment. They were then sent home with instructions to contact the plant doctor if they felt any effects from the gas.
After arriving home, Hampton became seriously ill, and his wife rushed him to the emergency room at Our Lady of the Lake Hospital in Baton Rouge. Despite all of the hospital's efforts, Hampton's condition rapidly worsened, and he died during the early morning hours of the following day, after suffering extreme pain for several hours. He was survived by his wife and minor daughter.
On January 3, 1975, Mrs. Georgia Parker Hampton, individually and as natural tutrix of her minor child, Marge Lynette Hampton,[1] commenced a survival and wrongful death action against Rubicon, Rubicon's insurer (Reliance Insurance Company), and Fireman's Fund Insurance Company, the liability insurer of B & B, whose policy, the petition asserted, covered as insureds the executive officers, management, safety officials, supervisors, and other employees of B & B.[2]
Prior to trial a settlement was reached with Rubicon and its insurer, and they were subsequently dismissed from the suit reserving rights against all other persons.
After a number of years, the case went to trial by jury with Fireman's Fund as the sole party defendant. After a lengthy trial, a verdict was rendered in favor of Fireman's Fund, and judgment was signed in accordance with the jury's verdict.[3]
Shortly thereafter, counsel for plaintiffs learned that counsel for Fireman's Fund had withheld pertinent information regarding insurance coverage.[4] Upon this discovery, *462 plaintiffs moved for a new trial based on newly discovered evidence. LSA-C.C.P. art. 1972(2). This motion was denied. On appeal, this court affirmed the judgment and the denial of a new trial. Hampton v. Rubicon Chemicals, Inc., 436 So.2d 1254 (La.App. 1st Cir.1983).
On December 9, 1983, the supreme court granted writs. Hampton v. Rubicon Chemicals, Inc., 442 So.2d 462 (La.1983). After hearing and rehearing, the supreme court determined that the original trial had been critically flawed, vacated its original opinion, reversed the decision of this court, and remanded the matter to the trial court for a new trial. The supreme court stressed that "the interests of justice require that a new trial be granted." Hampton v. Rubicon Chemicals, Inc., 458 So.2d 1260, 1275 (La.1984) (On Rehearing).
Prior to the new trial, plaintiffs amended their pleadings naming certain B & B executive officers, including John Daniel and Dean Armstrong, and the heirs of the deceased consultant, Julian Dyason.[5] The new trial was subsequently conducted as a bench trial before Judge Carl Guidry.
At the new trial, plaintiffs introduced the transcript from the first trial and produced several additional witnesses: Dr. Hans Weill, on the delayed effects of phosgene gas and Hampton's chance of survival if prompt medical treatment had been rendered; Dr. Yehia Hammad, on the failure of B & B to provide gas masks and to give evacuation instructions; Mr. Fred Broussard, a safety expert; Mr. Thomas J. Standfill and Mr. Floyd A. Toups, Rubicon's employees; Mr. Dyason's widow; Mr. Robert Grace, a co-worker of Dyason; Walter Price, a subcontractor's employee; David Williams, adjuster for Fireman's Fund; and Drs. Carl Luikhart and James Richardson. The plaintiff also recalled some of the witnesses who had testified at the original trial. Fireman's Fund presented the testimony of John Daniel, a B & B executive officer, in its behalf. Daniel had already testified on cross in the plaintiffs' presentation of their case.
Following the trial, Judge Guidry determined that Armstrong was an executive officer of B & B, that he was covered by Fireman's Fund policy, and that he was at fault in causing Hampton's death. Judgment was rendered in favor of plaintiffs and against Armstrong and Fireman's Fund, awarding plaintiffs general and special damages with interest. The judgment also awarded Mrs. Dyason attorney's fees. The judgment further limited the amount the plaintiffs could recover "in accordance with the terms of the insurance policy" in evidence. All other defendants, including John Daniel, were dismissed. Armstrong and Fireman's Fund were cast for all costs. The judgment was silent on the question of interest on the award to Mrs. Dyason. From this adverse judgment, Dyason, Fireman's Fund, Armstrong, and plaintiffs appeal.

ISSUES
The issues before the court are as follows:
1. Did the trial court err in not limiting the scope of the new trial?
2. Did the trial court err in finding Dean Armstrong liable as an executive officer?
3. Did the trial court err in not finding John Daniel liable as an executive officer?
4. Did the trial court err in finding that Fireman's Fund's policy covered the executive officers?
5. Did the trial court err in finding that the policy limits were reduced by other payments made under the policy?
6. Did the trial court err in its quantum award?
7. What was the effect of the plaintiffs' release of Rubicon and its insurer?
8. Did the trial court err in its fixing of the attorney's fees for Mrs. Dyason, by not awarding penalties, and by not awarding interest?
9. Has the claim against Dyason prescribed?

*463 10. Has the claim against Armstrong prescribed?

SCOPE OF NEW TRIAL
Fireman's Fund contends that the trial judge erred in failing to limit the scope of the second trial. We disagree.
In Ford v. Hartford Insurance Company, 528 So.2d 770 (La.App. 3rd Cir.1988), the court determined that the claimant was entitled to a new trial based upon newly discovered evidence. In its decision, the court stated:
LSA-C.C.P. art. 1972, section (2) has been consistently interpreted by the jurisprudence to mean that a new trial must be granted on the grounds of newly discovered evidence where such evidence is not merely cumulative, would tend to change the result of the case, was discovered after the trial, and could not, with due diligence, have been obtained before or during the trial.
528 So.2d at 775.
In the instant case, the supreme court originally denied the request for a new trial, then reversed the original denial of a new trial and remanded the case to the trial court for "a new trial." The supreme court did not place any limitations or restrictions on the new trial. In fact, the court emphasized that "the interests of justice require that a new trial be granted." Fireman's Fund is in error when it states that the supreme court found "no fault with the determinations made by the jury following the original trial." In effect, the supreme court found that the original trial was so fundamentally flawed and unfair to plaintiffs that there was no valid trial.[6] Justice had been denied to the plaintiff.
In remanding for new trial, the supreme court remarked:
The evidence suggests strongly that Mack Hampton would have survived if he had been properly trained or had had proper safety equipment or had received prompt medical treatment immediately following his exposure to the phosgene gas, and the interests of justice require that a new trial be granted.
458 So.2d at 1275.
In Barker v. Rust Engineering Company, 428 So.2d 391 (La.1983), relied upon by Fireman's Fund in this appeal, the court stated:
The trial court did not limit the issues for a new trial; however, it was primarily concerned with the possibility of contractual duties on the part of Lamb-Grays. This additional evidence and issue were not before the jury, and there cannot be a full and final adjudication of *464 Lamb-Grays' liability without all of the evidence on all issues before the jury [trier of fact] at the new trial. The trial court did not abuse its discretion in not limiting the issues for new trial. C.C.P. 1971.
428 So.2d at 394.
In Barker the trial judge granted the motion for a new trial only as to a certain defendant. He had previously directed a verdict in favor of one of the defendants, and he denied the motion for new trial as to that defendant and another defendant. The matter was before the supreme court on a writ of certiorari to the trial court considering the denial of the writ applicant's motion for a devolutive appeal. Barker is not controlling in the case sub judice.
In the instant case, the unlimited new trial was ordered by the supreme court. The trial court had no discretion to limit the scope of the new trial. To limit the new trial to liability of defendants Dyason and Daniel would not have served "the interests of justice" demanded by the supreme court.

DETERMINATION OF EXECUTIVE OFFICER LIABILITY
Fireman's Fund contends that the trial judge was not entitled to re-determine Mr. Armstrong's liability. The trial judge's determination on the new trial was not a re-determination of Armstrong's liability. Armstrong was not a party defendant in the original trial, the only defendant in that trial was Fireman's Fund. For the most part, this argument was answered in our discussion of scope of the new trial, where we held that the trial judge correctly held a new, unlimited trial. There is no merit in Fireman's Fund's argument that "Armstrong was not liable" is the law of the case. The case cited by Fireman's Fund, Day v. Campbell-Grosjean Roofing and Sheet Metal Corporation, 260 La. 325, 256 So.2d 105 (1971), is inapposite. The question of Armstrong's liability has never been fairly litigated. The underlying basis for the supreme court's remand for a new trial was the essential unfairness of the original trial. It was incumbent upon the trial court to determine whether or not Mr. Armstrong, an executive officer of B & B, was at fault, on the new trial. The trial court correctly ruled on this question.
Fireman's Fund also argues that the trial judge's conclusion that Mr. Armstrong should have trained his men in escape procedures, rather than the Rubicon operatives who were in charge of the unit and the engineering control in place, is patently incorrect. The violation of OSHA regulations, if any, is not a decisive element in determining the fault of Mr. Armstrong.
The trial judge, in his oral reasons for judgment, remarked:
The record is clear after hearing everything, quite frankly, that Mr. Hampton had not been trained for evacuation, had not been trained for the use of masks and in fact there was no evidence that there were masks available, that they had knowledge of the masks available.
And whose fault was it there was a lack of training? The record indicates that Mr. Daniel, executive officer, vice-president of this large company with many jobs, many people, many diversified undertakings by the company [B & B], was given the job to be the safety person, so to speak. He looked to the people in the field, I gather from the overall testimony, the primary man at each location was the man really in charge of the safety, was a first line man on safety, and that was Mr. Armstrong in this particular case, and Mr. Armstrong's testimony is clear on that point. He knew that he had a responsibility for safety. In fact one of his comments that struck me, his job depends on safety.... He never testified, to my knowledge, about any drills, about evacuation, which common sense dictates ought to be a requirement of a safety procedure when something bad happens, how you should react. It's basic, you should train to some extent.... Had there been any, in my opinion, it seems that some of the workers at that plant would have been put on the stand to say yes, we had *465 occasional drills; yes, we were instructed about the cannisters (sic), where they were, what we were supposed to do with them, etc. The record is completely void and it really stands out in my mind to the point that if there had been some training that some of the workers would have come in and explained and said yes, we had an occasional drill we knew where they were, we had these ... [respirators] to be used if we wanted to use them....
....
Mr. Hampton was lost because he got too much gas and was not watched closely enough. Mr. Armstrong knew about these latent effects [of phosgene gas], he testified to that effect.... [He was told that there had been a massive escape of phosgene gas.]
....
[The trial court then determined that Mr. Armstrong was at fault.]
I find that Mr. Armstrong, as an executive officer, was at fault and that Mr. Hampton clearly died of the phosgene inhalation and proper training and quicker medical attention could have certainly given him a better chance to have survived, no question, and I can say that fault was a substantial factor in his damage and demise.
The trial judge also pointed out that Armstrong was an executive officer of B & B and was covered under the Fireman's Fund policy.
It should be noted that Fireman's Fund's adjuster, Mr. David Williams, testified that Armstrong had the most to do with the supervision or control over B & B's Rubicon operation. He also said that Armstrong was responsible for the day-to-day safety training of B & B's employees. He also testified that Daniel was the next in line among the upper echelon of the organization.
It is well settled that an employer has an obligation to provide his employees with a working place and conditions which are reasonably safe considering the nature of the work. LSA-R.S. 23:13; Lytell v. Hushfield, 408 So.2d 1344, 1347-48 (La.1982). The obligation was not met by the performance of Mr. Armstrong in this case.
Two injured B & B employees testified they had no training in safety procedures to be used in case of a phosgene leak or other emergency. They were given no information concerning the toxicity of phosgene. They did not know that Scott air packs or other safety devices were available for their use if needed, and they were completely unaware of proper safety measures.
The landmark executive officers suit prior to the 1976 amendment to LSA-R.S. 23:1032 was Canter v. Koehring Company, 283 So.2d 716 (La.1973), which established the following criteria for imposing individual liability:
1. The principal or employer owes a duty of care to the third person (which in this sense includes a co-employee), breach of which has caused the damage for which recovery is sought.
2. This duty is delegated by the principal or employer to the defendant.
3. The defendant officer, agent, or employee has breached this duty through personal (as contrasted with technical or vicarious) fault. The breach occurs when the defendant has failed to discharge the obligation with the degree of care required by ordinary prudence under the same or similar circumstances whether such failure be due to malfeasance, misfeasance, or nonfeasance, including when the failure results from not acting upon actual knowledge of the risk to others as well as from a lack of ordinary care in discovering and avoiding such risk of harm which has resulted from the breach of duty.
4. With regard to the personal (as contrasted with technical or vicarious) fault, personal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiff, breach of which specifically has caused the plaintiff's damages. If the defendant's general responsibility *466 has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm.
283 So.2d at 721.
Accordingly, for one to be considered an "executive officer" within the scope of the cause of action asserted herein by the plaintiffs that person must have some personal contact with the responsibility toward the injured employee. The evidence in the record shows that Dean Armstrong, Hampton's immediate supervisor, personally had the responsibility for the safety of his workers, including Hampton, and that Armstrong failed to meet his responsibility for safety in that he failed to train the workers for evacuation in the event of a dangerous condition, failed to instruct his workers on the use of gas masks or even the availability of such masks, and failed to conduct evacuation drills or explain to his workers any safety procedures. There was a total lack of even minimum safety precautions taken by Armstrong in this case. Armstrong breached his duty through his own personal fault. See Lytell v. Hushfield, 408 So.2d at 1348; Greene v. Wright, 365 So.2d 551, 559-60 (La.App. 1st Cir.1978).
Thus, we affirm the trial judge's finding of fault on the part of Armstrong. However, we find that the trial judge erred in not finding that Mr. John Daniel was also an executive officer under the Canter criteria. Daniel, a senior executive officer of B & B, was the chief officer in charge of safety. Daniel's role in the case was cogently pointed out by the supreme court, on rehearing:
The rehearing application focuses primarily on the fault of John L. Daniel, Sr., a senior executive officer with Barnard and Burk, who testified that safety was under his administration at the time of this accident; he furnished safety services through the employment of Julian Dyason as consultant. The jury made a factual finding that Daniel was an executive officer of Barnard and Burk. Fireman's Fund Insurance Company provided liability insurance coverage to Daniel under the policy issued to Barnard and Burk.
Hampton v. Rubicon Chemicals, Inc., 458 So.2d at 1271.
Further, the supreme court stated:
The evidence adduced at trial strongly suggests that the safety program of Barnard and Burk at the Rubicon facility was deficient in several respects and that this deficiency was attributable to Dyason and/or Daniel.
Hampton v. Rubicon Chemicals, Inc., 458 So.2d at 1273.
We disagree with the holding of the trial court that Daniel was not at fault. Under the "executive officer" jurisprudence, when a defendant executive officer breaches a duty of care owed to an employee through personal fault, the executive is liable for any resulting risk of harm. Lytell v. Hushfield, 408 So.2d at 1347. Therefore, we find that Daniel is also liable. We reverse the judgment insofar as it finds no liability on the part of defendant Daniel and render judgment against him as a solidary obligor with Armstrong and Fireman's Fund.

INSURANCE COVERAGE
Fireman's Fund contends that its policy did not afford coverage to Armstrong "against any liabilities he might have to plaintiffs on account on [of] the death of Mack Hampton." There is no merit to Fireman's Fund's argument on this issue. We have already decided that Mr. Armstrong was an "executive officer" of B & B and that Hampton's death was caused by the fault of Armstrong.
Dean Armstrong was the highest ranking B & B executive official at Rubicon in his position as superintendent of maintenance. Armstrong had the power to hire and fire the B & B employees at Rubicon. He directed the day-to-day operations of B & B at Rubicon. We have already found that Armstrong was charged with administering *467 the safety program for B & B at Rubicon and for overseeing the first aid and medical treatment B & B employees received as the occasion arose. As we have stated, Armstrong was an "executive officer" at the time of Hampton's accident and injuries. As an "executive officer," Armstrong was covered by the Fireman's Fund insurance policy.
Fireman's Fund also argues that it amended its insurance policy with B & B to extend coverage to additional insureds, such as supervisors, superintendents, and section heads of B & B while acting within the scope of their duties and that such amendment would have been unnecessary had Armstrong been an executive officer of the company in that he would have been covered under the basic provisions of the policy.
If the basic policy and the amendment could be construed as containing an exclusion clause, we hold that such clause had no application to the case sub judice. Further, exclusion clauses in a liability insurance policy are strictly construed against the insurer if capable of more than one interpretation. See Credeur v. Luke, 368 So.2d 1030, 1032 (La.1979). It follows that any indefiniteness in the expression "executive officer" as used in a liability policy shall be construed against the insurer.
We find that the Fireman's Fund policy covered the executive officer, Dean Armstrong. The same rationale applies to John Daniel. Daniel was established to be an executive officer, and he is covered under the Fireman's Fund policy.
In Seals v. Morris, 423 So.2d 652 (La. App. 1st Cir.1982), writ granted on other grounds, 433 So.2d 686 (La.1983), this court stated:
Simply stated, coverage can not be provided by the right hand and then be excluded by the left hand. A policy can not in one instance declare there is express coverage and in a second provision declare effectually there is not coverage.
It is clearly established that where there is doubt or ambiguity as to the meaning of a provision in an insurance policy such must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to provisions which limit coverage under the policy, the law requires the contract be interpreted liberally in favor of coverage. (Citations omitted).
423 So.2d at 656.
In line with Seals and the cases cited therein, we find these rules to be controlling in the instant case. The provisions of the policy are ambiguous in that the basic policy covers the liability of executive officers while the amendment appears to include additional insureds, to-wit: supervisor, superintendent, or section head.

REDUCTION OF POLICY LIMIT
Plaintiffs submit that the trial court erred in finding that the $500,000.00 Fireman's Fund policy was reduced by other payments made under the policy.
At the trial, Fireman's Fund introduced evidence that it had paid $247,496.13 to Rubicon and its insurer, Reliance, under an indemnity agreement between B & B and Rubicon. Fireman's Fund introduced the suit between Rubicon/Reliance and B & B and Fireman's Fund. It appears that Rubicon/Reliance settled with Hampton and other laborers for $146,312.54, for damages arising out of this same accident. The court upheld the indemnity agreement and ordered Fireman's Fund to repay Rubicon/Reliance for the sums paid in the settlements. Reliance Insurance Company v. Barnard & Burk, Inc., 428 So.2d 1097 (La.App. 1st Cir.), writ denied, 433 So.2d 154 (La.1983).
There are several coverages contained in the policy. Coverage A covers bodily injury attributable to the negligence of executive officers of B & B. There are other coverages not pertinent to this case. The limit of this coverage is $500,000.00. The executive officers are listed as named insureds. The limits of liability for this coverage are set out in Part I, Section III:
Coverage AThe total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one *468 or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the declarations as applicable to "each occurrence."
The above limitation applies only to Coverage A. The declaration page shows that a separate calculated premium was charged for Coverage A.
The policy contains an exclusion from coverage in Part I, Section I:
This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement except an incidental contract;...
An "incidental contract" is defined in the policy as:
[A]ny written (1) lease of premises, (2) easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad, (3) undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality, (4) sidetrack agreement, or (5) elevator maintenance agreement; ...
The contract between B & B and Rubicon is not an "incidental contract" within the meaning of the policy.
Further, Coverage A does not provide coverage for the indemnity agreement between B & B and Rubicon. B & B purchased additional, separate coverage from Fireman's Fund for liability assumed in the indemnity agreement. This coverage is found in Coverage YContractual Bodily Injury Liability, which is appended to the policy by endorsement. This endorsement, which also includes Coverage ZContractual Property Damage Liability, provides contractual liability coverage for bodily injury up to $500,000.00 per occurrence. The schedule section of the endorsement shows that a separate calculated premium was charged for this particular coverage. The endorsement has its own "limits of liability" section and separate exclusions, definitions, and conditions sections.
We find that under the policy and endorsement, the payments Fireman's Fund made pursuant to the Rubicon/Reliance settlement must be attributed to Coverage Y since this is the contractual indemnity insurance coverage provision.
We hold that the trial court erred in reducing the $500,000.00 policy limit available to plaintiffs under Coverage A.

QUANTUM
Fireman's Fund complains that the damages awarded are excessive and should have been fixed by reference to awards made in similar cases of 1974 vintage (when the case arose), so that the award to the surviving spouse should not have exceeded $75,000.00 and the award to the daughter should not have exceeded $25,000.00.
The plaintiffs complain that the general damage to each of them is inadequate and that the award for economic loss is less that it should have been from the evidence in the record.
Generally, damages are fixed as of the date of trial and not on the date the case arose. In the assessment of damage awards, the trier of fact has much discretion. LSA-C.C. art. 1999. Before an appellate court can disturb a trial court award, the record must clearly reveal an abuse of discretion. Only after finding that the lower court has abused its much discretion can the appellate court modify the award, and then only to the extent of lowering it to the highest point or raising it to the lowest point which is reasonably within the lower court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).
In reviewing this issue, we must heed the supreme court's admonition in Reck v. Stevens, 373 So.2d 498, 500 (La.1979), that before we can consider prior awards, we must first look at the individual circumstances of this case and determine that the trier of fact abused its "much discretion" in awarding damages.
The trial court awarded the widow general damages of $150,000.00, economic losses of $250,000.00, and reimbursement of hospital and funeral expenses of $2,219.00. The trial court awarded the child, who was *469 a minor at the time of her father's death, the sum of $100,000.00 in general damages. Additionally, an award of $25,000.00, to be shared equally, was awarded to the widow and child for the pain and suffering sustained by the deceased in the survival action.
The elements of damage for wrongful death are loss of love, affection, companionship, and support and funeral expenses. Walker v. St. Paul Insurance Companies, 339 So.2d 441, 443 (La.App. 1st Cir.1976), writ granted on other grounds, 341 So.2d 554 (La.1977). Damage awards in other cases involving comparable injuries serve only as aids in determining whether a particular award is so grossly disproportionate to awards for truly similar injuries or losses that an abuse of discretion is thereby shown. Temple v. Liberty Mutual Insurance Co., 336 So.2d 299, 301 (La.App. 1st Cir.), writ refused, 339 So.2d 23 (La.1976).
Hampton and Georgia Parker Hampton were married for 14 years and their only child, Marge, was 14 years old at the time of her father's death. Hampton was a steady worker on his job and was a "handy man" around the house. The Hamptons enjoyed family activities together. He was devoted to his family. The evidence showed that the Hamptons had no marital difficulties. They were never separated, and they were a model of family closeness. His widow has not remarried.
The daughter and father were very close. They went places together, he regularly attended girl scout meetings with his daughter, and he took her to play tennis and to junior high school pepster meetings. Marge went to the hospital with her mother when Hampton sought assistance in the emergency room. She became withdrawn after her father's death. In fact, his death had a dramatic effect upon her personality.
We have carefully reviewed the entire record and find that the record establishes that the Hamptons were a close and loving family. Accordingly, we find that the trial court did not abuse its discretion in awarding plaintiffs, Georgia and Marge Hampton, $150,000.00 and $100,000.00, respectively, for the loss of love and affection sustained as a result of the death of Mack Hampton.
Concerning the economic loss to the plaintiffs, the evidence reveals that Hampton worked as a maintenance laborer. His average weekly wage was $160.00, and he had a work life expectancy of 32 years.
Dr. James Richardson, plaintiffs' expert in the field of economics, testified regarding the economic loss to the plaintiffs occasioned by Hampton's death. Dr. Richardson considered Hampton's occupation, his wages, his work life expectancy, and his contribution to the household. In his estimation, the economic loss amounted to $341,591.00, as of April, 1989.
Under the circumstances, we find the trial court's damage award of $250,000.00 to the surviving spouse and daughter for loss of support to be so low as to amount to an abuse of the trier of fact's much discretion. We find that the economic losses were proven to the extent of $341,591.00 by the expert witness, Dr. James Richardson. Mrs. Hampton is entitled to the proven amount for this item of damages.
With regard to damages for Mack Hampton's survival action, a trial court is within its much discretion in awarding damages for pain and suffering where there is the smallest amount of evidence of pain on the part of the deceased by his actions or otherwise. Anthony v. Hospital Service District No. 1, 477 So.2d 1180, 1185 (La. App. 1st Cir.1985), writ denied, 480 So.2d 743 (La.1986); Marceleno v. State, Department of Highways, 367 So.2d 882, 891 (La. App. 2nd Cir.1978), writ denied, 369 So.2d 1364 (La.1979). Factors to be considered in assessing quantum for pain and suffering are the severity and duration thereof. Buckley v. Exxon Corporation, 399 So.2d 1225, 1227 (La.App. 3rd Cir.1981).
The evidence reveals that Hampton was 37 years old when he died. After the exposure to phosgene, he lived about nine and one-half (9½) hours. His last hours were very painful. The evidence indicates that phosgene gas reacts with the lining of *470 the lungs to disturb the enzyme system that controls the surface tension of the air within the lungs. The elements in the cells of the lung tissue which utilize the enzyme system are broken down, resulting in extremely high surface tension in the lungs. Consequently, fluid in the blood exudes into the minute air vesicles in the lungs where oxygen exchange takes place and produces pulmonary edema, commonly known as fluid in the lungs. If this build up of fluids is not controlled, oxygen exchange cannot take place, so that the victim literally drowns in his own fluids and dies.
We find that the $25,000.00 award for Mack Hampton's pain and suffering prior to his death is insufficient. An award of $50,000.00 for the pain and suffering of Hampton is the lowest amount which is reasonably within the much discretion of the trier of fact. See Comberrel v. Basford, 550 So.2d 1356, 1361 (La.App. 5th Cir.1989), writs denied, 556 So.2d 1284, 1285, 1286 (La.1990); Snell v. United Parcel Services, Inc., 543 So.2d 52, 56 (La.App. 1st Cir.), writ denied, 545 So.2d 1040 (La.1989).

EFFECT OF RELEASE
Our review of the release and dismissal in the instant case shows that the plaintiffs only released Rubicon, its employees, and its insurer, Reliance. The release specified that officers and employees of B & B were not released. Dyason was found not at fault and was not a solidary obligor. We find that B & B and its insurer, Fireman's Fund, were not released.
This issue actually need not be considered since none of the parties released by plaintiffs have any liability in this matter. The lower court, after seeing and hearing the witnesses and considering the evidence, found Julian Dyason to be free from fault and dismissed the suit against Mrs. Dyason. We agree with this finding.

ATTORNEY'S FEES, PENALTIES, AND INTEREST
On this issue, Mrs. Dyason contends that Julian Dyason, the consultant, was an insured of Fireman's Fund by virtue of the indemnity and hold harmless agreement, and Fireman's Fund's coverage of all of B & B's contracts and contractual liabilities subjected Fireman's Fund to penalties and attorney's fees for its refusal to defend Dyason.
The record supports this contention. Fireman's Fund was arbitrary, capricious, and without probable cause in declining to defend this action against Dyason. Fireman's Fund owed Dyason the obligation of defending him under the indemnity agreement, and it was in bad faith in refusing to do so.
We find that Mrs. Dyason is entitled to recover attorney's fees and penalties from Fireman's Fund, so we amend the trial court's judgment in this respect. See LSA-R.S. 22:658; Allen v. Keeney, 532 So.2d 521, 523 (La.App. 1st Cir.1988). Mrs. Dyason is awarded $35,000.00 as attorney's fees and $3,500.00 as penalties (10% of the award).[7] Legal interest on the penalties and attorney's fees are awarded, such interest to run only from the date of the trial court's judgment. See Gulf Wide Towing, Inc. v. F.E. Wright U.K. Limited, 554 So.2d 1347, 1355 (La.App. 1st Cir.1989). Fireman's Fund must also make reimbursement to Mrs. Dyason for expenses.

PRESCRIPTION
Mrs. Dyason asserts that the claim against Julian Dyason has prescribed. The trial court did not rule on this exception, but referred it to the merits. In deciding the merits of the case, the trial court found that Julian Dyason was not at fault, so it became unnecessary to rule on this issue. We agree with the trial court.
*471 Dean Armstrong has filed a plea of prescription in this court, contending that LSA-C.C. art. 3492 is applicable. We have already held above that Fireman's Fund is Armstrong's liability insurer. As such, the insurer and insured are solidary obligors. As the record shows, suit against Fireman's Fund was timely. This timely filing against one solidary liable obligor interrupts prescription as to the other solidary obligors. LSA-C.C. art. 1799; Levron v. Bonin, 448 So.2d 211, 213 (La.App. 1st Cir.1984).
There is no merit in this exception.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed in part, amended in part, and affirmed in part. In accordance with our opinion, we re-cast the judgment to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Georgia Parker Hampton and Marge Lynette Hampton and against defendants, Dean Armstrong, John Daniel, and Fireman's Fund Insurance Company, in solido, in the following principal amounts, plus legal interest from date of judicial demand, January 3, 1975.
In favor of Georgia Parker Hampton in the amount of $150,000.00 in general damages; $341,591.00 for economic losses; and, $2,219.00 to reimburse her for hospital and funeral expenses incurred on account of the death of Mack Hampton.
In favor of Marge Lynette Hampton, the sum of $100,000.00 in general damages.
In favor of Georgia Parker Hampton and Marge Lynette Hampton the sum of $50,000.00 in damages suffered by Mack Hampton prior to his death.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the liability of Fireman's Fund Insurance Company to the plaintiffs, Georgia Parker Hampton and Marge Lynette Hampton, under this judgment is $500,000.00 plus legal interest and court costs.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs' suit be dismissed with prejudice against the other defendants, John S. Buck, Allen Harth, Spencer Cosper, Mary Louise Roberts Dyason, Julie Marie Dyason, Jill Claire Dyason, and David Fowler Dyason.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Mary Louise Roberts Dyason, on her third party demand, against Barnard & Burk, Inc., Fireman's Fund Insurance Company, and Abard Corporation, in solido, in the amount of $38,500.00, as attorney's fees and penalties, plus legal interest from date of judgment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants, Dean Armstrong, John Daniel, and Fireman's Fund Insurance Company, be cast for all costs of this litigation, including fees of expert witnesses who testified on the trial of this matter, which fees the court sets as follows:
Dr. Yehia Hammad, $200.00
Dr. Hans Weill, $250.00
Fred Broussard, $150.00
Dr. Carl Luikhart, $250.00
Dr. James Richardson, $150.00
JUDGMENT OF THE TRIAL COURT IS REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, AND RENDERED.
SHORTESS, J., concurs in the result with a statement.
SHORTESS, Judge, concurring in part.
I agree with all aspects of the majority's well-reasoned opinion except the finding that John Daniel was guilty of fault. The trial court found no fault on the part of Daniel, and its judgment is not clearly wrong because the record articulates no "personal fault" by Daniel. Lytell v. Hushfield, 408 So.2d 1344, 1348 (La.1982).

ON APPLICATION FOR REHEARING
Defendants' application for rehearing filed on April 12, 1991, and the motion to supplement the record on appeal and application *472 for rehearing filed on April 16, 1991 are denied.
With regard to defendants' motion to supplement the record and application for rehearing, we note that on original hearing, the record contained the entire record, including the testimony from the trial of this matter. The 1982 trial record was introduced into evidence (as in globo exhibit J-1) and was made part of the record. Upon receipt of the motion, this court re-examined the record, and the exhibit allegedly not transported to this court was still in the record. Defendants' motion to supplement the record was obviously filed without either a prior examination of the appellate court record or after an incomplete examination of the record. In any event, this motion is totally without merit.
REHEARING DENIED AND MOTION TO SUPPLEMENT DENIED.
SHORTESS, J., would grant rehearing only to re-examine the question of John L. Daniel's fault.
NOTES
[1] The minor child reached the age of majority during the lengthy course of the proceedings and was subsequently substituted as a party plaintiff.
[2] As the accident in question occurred prior to the effective date of the 1976 revision of LSA-R.S. 23:1032 (Louisiana Workers' Compensation Act), an executive officer tort action was available to the plaintiffs. Hence, a direct action against the insurer was also available at that time. See Canter v. Koehring Company, 283 So.2d 716 (La.1973).
[3] At the conclusion of the trial, the jury was required to return special interrogatories determining whether six (6) named supervisory employees of B & B were liable for Hampton's death. The supervisory employees named were Dean Armstrong, B & B's supervisor at the Rubicon plant; John Burk, president of B & B; John Daniel, executive vice-president of B & B; and, Allen Harth, Sid Blanchard, and Spencer Cosper, all of whom were supervisory employees of B & B.
[4] Shortly after trial, counsel for plaintiffs discovered that Fireman's Fund had previously settled a similar case based on the negligence of Julian Dyason (B & B's safety consultant at the time), and that Dyason's contract with B & B contained an indemnity provision which was in turn insured by Fireman's Fund.
[5] Dyason died in 1976 before the first trial.
[6] In Hampton v. Rubicon Chemicals, Inc., 458 So.2d at 1272, the supreme court pointed out:

In oral argument, defense counsel attempted to convince the jury that Dyason rather than Daniel was the only party at fault. It is clear that the only reason Julian Dyason was not named in the jury interrogatories is because plaintiffs' counsel concluded from discovery that Dyason was not covered by Fireman's Fund Insurance Company. ... In connection with the motion for new trial, plaintiffs introduced the deposition of Julian Dyason [in another suit]. In the deposition, Dyason identified a letter agreement he had with Barnard and Burk signed by John L. Daniel as senior vice-president and dated December 12, 1972. (Footnote omitted).
[In the agreement, B & B agreed to defend or indemnify and hold harmless Julian Dyason & Associates against any and all expenses which they might incur as a result of any suit brought against them by an employee of B & B].
In an answer to a request for admissions, Fireman's Fund Insurance Company stated:
Neither Fireman's Fund Insurance Companies nor its attorneys has been able to find any written contract or correspondence between Julian Dyason and officials of Barnard and Burk, Inc.
Hampton v. Rubicon Chemicals, Inc., 458 So.2d at 1272.
The supreme court observed:
The jury was not interrogated about any negligence by Julian Dyason because plaintiffs' attorneys had been led to believe that Fireman's Fund Insurance Company, the only defendant at the time of trial, had no coverage for Dyason. Subsequent to the adverse jury verdict, plaintiffs' attorneys accidentally discovered that Fireman's Fund not only had indemnity coverage for any negligence or fault of Dyason under his contract with Barnard and Burk but had in fact settled a case involving that coverage in 1976. Plaintiffs argue that this coverage of Julian Dyason had been concealed by the discovery responses of Fireman's Fund Insurance Company.
Hampton v. Rubicon Chemicals, Inc., 458 So.2d at 1271.
[7] By Acts 1986, No. 132, § 1, effective June 26, 1986, the statutory penalties provided by LSA-R.S. 22:658 were lowered from 12% to 10% damages on the total loss. Although this action commenced January 3, 1975, the record reveals that the pleading adding Mrs. Dyason as a defendant and her demand that Fireman's Fund provide her with a defense both occurred after the effective date of this amendment.