**AETNA FIRE UNDERWRITERS INSURANCE CO., Appellant,**

v.

**SOUTHWESTERN ENGINEERING COMPANY, Appellee.**

**No. 8647.**

Court of Appeals of Texas, Beaumont.

Nov. 24, 1981.

Rehearing Denied Dec. 17, 1981.

George H. Spencer, San Antonio, for appellant.

Robert C. Patterson, Corbin L. Snow, San Antonio, for appellee.

CLAYTON, Justice.

Appellee, Southwestern Engineering Company, filed this suit against appellant, Aetna Fire Underwriters Insurance Company, on a liability insurance policy to recover Southwestern's cost of defense and settlement of three property damage suits filed against it, which appellant declined to defend on the grounds that the damages asserted in the suits arose out of engineering services performed by Southwestern which were excluded under the policy provisions. In a non-jury trial, judgment was entered for Southwestern from which Aetna has appealed.

The record before us reveals that Southwestern is a consulting engineering firm which designs telephone systems. Southwestern entered into a contract with Fort Bend Telephone Company to design expansion facilities of Fort Bend in Waller County. Sandidge Construction Company contracted with Fort Bend to construct the facilities designed by Southwestern. On April 3, 1974, while digging a trench into which telephone cable was being buried, Sandidge struck an underground pipeline owned by Phillips Pipe Line Company. As a result, three damage suits were filed against Southwestern. Aetna refused to defend the three damage suits, contending the insurance policy issued to Southwestern

did not cover the damages sought in the three suits, and, therefore, it was not obligated to defend such suits. This is the sole contention made by Aetna warranting its refusal to defend the three suits.

The primary question before this court is presented by Aetna's first point which is "[t]he trial court erred in failing to hold that as a matter of law the suits in question asserted damages arising out of engineering services performed by [Southwestern] which were excluded under the policy provisions." We do not agree and overrule this point.

Aetna issued a policy of insurance to Southwestern insuring against general liability for bodily injury and property damage, but excluding therefrom liability from use of automobiles and professional services. The exclusionary provision of the policy is stated as follows:

"It is agreed that the insurance does not apply to bodily injury or property damage arising out of any professional services performed by or for the named insured, including (1) the preparation or approval of maps, plans, opinions, reports, surveys, designs or specifications and (2) supervisory, inspection or engineering services."

It is the contention of Aetna that the location of underground pipelines, under the right-of-ways upon which Fort Bend's facilities were to be located, was one of the contractual obligations undertaken by Southwestern in its contract with Fort Bend. Aetna states in its brief that Southwestern's "duties and activities on the project were completely and solely based on its written contract with Fort Bend." We have carefully read the very lengthy and comprehensive contract between Southwestern and Fort Bend, and we do not find any provisions of such contract specifically authorizing or obligating Southwestern to locate any underground pipelines. Aetna argues that the location of such pipelines is an activity in the performance of "engineering services" and "the preparation or approval of maps, plans, ... surveys, designs or specifications," and, as such, any liability arising from the failure to locate

same is excluded from coverage under the exclusionary provision of the insurance policy hereinabove quoted.

In deciding the question before us, we are not called upon to give a definition of the term "engineering services." We note, however, that under the definition of "practice of engineering" or "practice of professional engineering," as defined in the Texas Engineering Practice Act, *Tex.Rev.Civ.Stat. Ann. art. 3271a, § 2(4)* (1968), it is stated that such terms "shall mean any service or creative work, ... the performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical, or engineering sciences to such services or creative work." The contract between Southwestern and Fort Bend does not define the term "engineering services." We cannot say as a matter of law the physical act of digging for and locating underground pipelines requires engineering education, training, and experience in the application of special knowledge of the mathematical, physical, or engineering sciences, so as to constitute the practice of professional engineering. The least that can be said is that the term "engineering services," not being definitely defined in the contract, is an ambiguous term.

It is a well recognized rule that exceptions and rules of limitations contained in an insurance policy will be strictly construed against the insurer. *Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762 (1953). We must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Glover v. National Insurance Underwriters*, 545 S.W.2d 755 (Tex.1977); *Continental Casualty Co. v. Warren*, supra; *Insurance Co. of North America v. Cash*, 475 S.W.2d 912 (Tex.1971). As stated by our Supreme Court in the *Glover* case, "We recognize that these rules of construction will be applied only when the language of the policy

is such that it may reasonably be given one of several instructions." When the language of an insurance contract is ambiguous (that is, is subject to two or more interpretations), then that construction which affords coverage will be the one adopted. *Glover v. National Insurance Underwriters*, supra.

We have concluded the "engineering services" term here in issue is ambiguous. One possible construction or interpretation of the term finds support in the evidence given by the witness, W. J. Thomas, the only professional engineer employed by Southwestern. He was the only person who performed professional engineering services. According to his testimony, Fort Bend advised Southwestern the route in which cables were to be laid; that Southwestern did not obtain right-of-ways other than "as an assistance to Fort Bend"; that Southwestern did not undertake to find any buried pipeline in Waller County; and that the professional services that he (Thomas) performed for Fort Bend were performed "in the headquarters office of Southwestern Engineering Company in Comfort." He testified further, in response to the direct question, "Does it take somebody with your engineering background to perform this kind of work [locating underground pipelines]?" "No, Sir. Most contractors have a man out in front of their plow...." Aetna's contention is essentially that the term "engineering services" is clearly unambiguous. We do not agree.

Applying the rules of construction to an ambiguous term contained in the insurance policy, and under the facts of this case, we hold the act of locating the underground pipelines is not included within the term "engineering services" as contained in the exclusionary clause.

It follows that Aetna was obligated under the terms of the policy to defend Southwestern against the three damage suits filed against it, and, pursuant to stipulations as to the expenses of defending the suits and settlements made, the trial court's award for damages against Aetna was proper. See *Goswick v. Employers' Casualty Company*, 440 S.W.2d 287 (Tex.1969).

By its ninth point, Aetna complains of the award of attorney's fees to Southwestern pursuant to *Tex.Rev.Civ.Stat.Ann. art. 2226* (Supp.1980). The trial court found the sum of $5,000 was a reasonable attorney's fee, and this finding as to reasonableness is not challenged.

Aetna contends that *Article 2226* allows recovery of attorney's fees in certain cases but provides that it does not apply to contracts of any insurer "subject to *Article 21.21*, Texas Insurance Code." Its argument is that *Article 21.21* applied to " 'any corporation ... engaged in the business of insurance ...,' " and, since Aetna is an insurance company, it is subject to the provisions of *Article 21.21* and is not subject to the provisions of *Article 2226*. We do not agree.

This suit by Southwestern against Aetna for the wrongful failure to defend against the damage suits is "founded on ... written contract" as provided in *Article 2226*. Attorney's fees are properly awarded unless prohibited by the exclusion therefrom of contracts of insurers issued by insurers "subject" to the Insurance Code's Unfair Claim Settlement Practices Act, the Unfair Competition, and Unfair Practices Act (*Article 21.21*) and *Section 3.62* of the Insurance Code (1981).

Aetna confines its point of error, and its argument thereunder, to the assertion that *Article 2226* does not apply to the insurance policy issued by it for the reason that it is subject to *Article 21.21*, Texas Insurance Code. *Article 21.21* is purely a regulatory statute, and *Section 1* thereof specifically provides, "The purpose of this Act is to regulate trade practices in the business of insurance ... by defining, or providing for the determination of, all such practices ... which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." *Section 3* provides: "No person shall engage in this State in any trade practice which is defined in this Act as, ... an unfair method of competition or an unfair or deceptive act or prac-

tice in the business of insurance." *Section 2(a)* provides that a " 'person' shall mean any ... corporation ... engaged in the business of insurance...."

 It is clear that *Article 21.21* does not affect any insurance company solely for the reason that it issues insurance policies. It affects only those that violate any of the provisions relating to unfair competition or unfair or deceptive acts or practices in the business of insurance, such acts or practices being specifically defined and set forth in other sections of *Article 21.21*. Therefore, the exclusionary clause contained in *Article 2226* as to those insurance contracts subject to *Article 21.21*, Texas Insurance Code, must be construed as such contracts upon which a claim or suit has been instituted based upon the violation of any such acts of conduct which are enumerated and defined as unfair methods of competition and unfair and deceptive acts or practices in *Section 4* of *Article 21.21*.

Any person who has been injured as a result of the violation of such acts may maintain an action against any insurance company engaging in such acts and may recover attorney's fees in addition to the other damages provided by *Article 21.21, Section 16(b)(1)*. One of the purposes in excluding certain contracts of insurance from *Article 2226* was to exclude only those claims against insurance companies where attorney's fees were already available by virtue of other specific statutes. See *Prudential Ins. Co. of America v. Burke*, 614 S.W.2d 847 (Tex.Civ.App.—Texarkana 1981, writ ref'd n. r. e.). This point is overruled.

All other points of error brought forward by Aetna have been considered and are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.