423 So.2d 652 (1982)
Shellie J. SEALS
v.
Eugene MORRIS, et al.
Sylvester L. HARRY
v.
Eugene MORRIS, et al.
Nos. 13405, 13406.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
*654 Jim W. Richardson, Jr., Bogalusa, for plaintiff-appellant.
John N. Gallaspy of Gallaspy & Paduda, Bogalusa, for Southern Farm Bureau Cas. Ins. Co.
John W. Anthony of Talley, Anthony, Hughes & Knight, Bogalusa, for Eugene Morris and Southeast Fidelity Ins.
John J. Hainkel, Jr. of Porteous, Toledano, Hainkel & Johnson, New Orleans, for U.S. Fidelity & Guaranty Co.
Before LOTTINGER, COLE and CARTER, JJ.
COLE, Judge.

FACTS
On April 24, 1976, defendant, Eugene Morris, was driving down a dirt lane, approaching an intersection with "Old River Road," also known as La. Highway 1071. Morris was moving at about ten miles per hour and was preparing to stop for the intersectional stop sign when he noticed a "little green snake" on his shoulder. Frightened by the unexpected presence of the snake, Morris lost control of his vehicle and proceeded into the intersection without stopping. His truck collided with a vehicle being driven by plaintiff, Shellie J. Seals. Plaintiff, Sylvester L. Harry, was a passenger in the Seals automobile.[1]

PROCEDURE
Shellie Seals filed suit against these parties: Eugene Morris and his insurer, Southeastern Fidelity Insurance Company; the insurers of Morris' principal (Mac's Timber Co., Inc.), United States Fidelity and Guaranty Company and Fidelity and Guaranty Insurance Underwriters, Inc.; and his own uninsured motorist carrier, Southern Farm Bureau Casualty Insurance Company.[2] Sylvester Harry filed suit against the same parties and named Shellie Seals as an additional defendant. Southern Farm responded with a demand against Morris and Southeastern, seeking reimbursement for sums advanced to Seals and Harry for medical expenses.[3] The two suits were consolidated for trial.
The trial court found Morris to be liable and rendered judgment in favor of Southern Farm and against Morris and Southeastern for the medical expenses. Judgment was further rendered in favor of both plaintiffs against Morris, Southeastern and Fidelity. Southeastern, Morris, Fidelity and Seals appealed.
On appeal, this court reversed the judgment of the trial court, finding Morris to be free from liability due to the "unavoidable or inevitable accident" doctrine. Plaintiffs were granted writs by the Supreme Court. On original hearing the Supreme Court reversed the judgment of this court, holding Morris liable on the basis of his "non-negligent fault." On rehearing the court reaffirmed its prior finding of liability but concluded Morris had indeed been negligent in parking his truck (with windows down) in an area known to be inhabited by snakes, and in his rather extreme reaction when he discovered the snake. The court ordered the trial court judgment be reinstated and remanded the case to this court for a review of the issues of damages and insurance coverage.

*655 ISSUES RAISED
Appellants, Morris and Southeastern, raise three issues to be considered in this remand. First, they argue the Fidelity policy provides coverage under the facts of this case. Second, they contend the damages awarded by the trial court were excessive. Third, they argue Southern Farm has waived its right to be reimbursed for the medical expenses because the judgment granting reimbursement was reversed by the Court of Appeal and Southern Farm did not seek writs.

Fidelity Coverage
In order to decide the Fidelity coverage issue, certain background information must be set forth. Defendant, Eugene Morris, was a "logger" by trade and worked as an independent contractor for Mac's Timber Company of Sandy Hook, Mississippi. Mac's Timber paid Morris on the basis of the amount of wood hauled and deducted money sufficient to pay for liability insurance on Morris' truck. The 1970 2-ton pulpwood truck was listed on the Fidelity policy as a covered vehicle under the "hired automobile" endorsement. The endorsement states the insurance with respect to owned automobiles would also apply to hired automobiles, subject to certain provisions.
Certain definitions are significant here.
A hired automobile is defined as follows:
"`hired automobile' means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured, provided such automobile is not owned by or registered in the name of (a) a partner or executive officer of the named insured or (b) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile."
The hired automobile schedule states the purpose of use was "commercial." We quote from the policy:
"`Commercial' means use principally in business occupation of the Named Insured as stated in the declarations including occasional use for personal pleasure, family and other business purposes." (Underlining by the court.)
Fidelity argues they did not provide coverage to Morris or his vehicle for several reasons. First, they argue Morris' truck was not a "hired vehicle" on the date of the accident because it was not being used "under contract in behalf of, or loaned to" the named insured. Morris contends his truck was being used for pleasure on the date of the accident and was expressly covered under the commercial use definition quoted above, and we agree.
Fidelity next contends that Eugene Morris, as owner of the hired vehicle, was excluded from coverage. They base the latter argument on the following policy definitions.
"B. Persons Insured. The `Persons Insured' provision applies to the insurance afforded by this endorsement, except that
(1) in paragraph (c) thereof the words `an owned automobile or a temporary substitute automobile' are amended to read `an owned automobile, a temporary substitute automobile or a hired automobile'; and
(2) neither the owner nor the lessee (of whom the named insured is a sub-lessee) of a hired automobile, nor any agent or employee of any such owner or lessee, is an insured." (Emphasis added.)
The trial court interpreted the owner exclusion to apply only when the hired automobile was hired without its owner, i.e., the named insured hired the automobile and used its own employee or some other person to drive the vehicle. Plaintiffs, Morris, and Southeastern, all argue any other interpretation would be absurd because if the owner of the truck in this case is not an insured then there is no reason for him to be paying an insurance premium for coverage.
The hired automobile owner exclusion has been the subject of several lawsuits and has been recognized as valid in certain instances not factually apropos to the instant case. See Bruno v. American Employers Insurance Company, 164 So.2d 63 (La.App. 4th Cir.1964), writ refused 1964; Johnson v. *656 Royal Indemnity Co., 206 F.2d 561 (5th Cir. 1953); Gonzalez v. National Surety Corporation, 266 F.2d 667 (5th Cir.1959).
However, none of the above cited cases address the issue raised by plaintiffs, Morris, and Southeastern as to why the owner is paying for insurance if he is not an insured. The Fidelity policy expressly includes as an insured vehicle, the 1970 Chevrolet Two Ton Pulpwood truck, "S # 3233 (owned by: Eugene Morris)." We have read carefully the policy and conclude the language of the policy is ambiguous. On one hand, Fidelity purports to insure Morris' vehicle as a "hired" automobile used for commercial purposes as well as occasional use for personal pleasure, family and other business purposes. On the other hand, the policy then purports to negate this coverage by excluding the owner (Morris), the lessee, or any agent or employee of any owner or lessee.
Simply stated, coverage can not be provided by the right hand and then be excluded by the left hand. A policy can not in one instance declare there is express coverage and in a second provision declare effectually there is not coverage. Cf. Credeur v. Luke, 368 So.2d 1030 (La.1979); McGuire v. Smith, 370 So.2d 895 (La.App. 1st Cir.1979).
It is clearly established that where there is doubt or ambiguity as to the meaning of a provision in an insurance policy such must be construed liberally in favor of the insured and against the insurer. When the ambiguity relates to provisions which limit coverage under the policy, the law requires the contract be interpreted liberally in favor of coverage. Craft v. Trahan, 351 So.2d 277 (La.App.3d Cir.1977). See also Credeur v. Luke, supra; McGuire v. Smith, supra. We find these rules to be controlling in the instant case. The provisions of the policy are ambiguous in that they expressly declare the occasional personal pleasure usage of the vehicle to be covered and then purport to remove as an insured the obvious person who would engage in such usage. Construing the policy liberally in favor of coverage, we are in agreement with the trial judge that Fidelity owes coverage for damages caused by Eugene Morris in the instant case.

Damages
Appellants contend the damages awarded the two plaintiffs were excessive. Judgment was rendered in Seals' favor for a total of $22,988.64. This sum included $7,988.64 for special damages and $15,000 for general damages. Of this amount, Southeastern was ordered to pay $3,891.00[4] and Fidelity was ordered to pay $19,097.64.
Judgment was rendered in favor of Harry for a total of $14,393.05. This amount included $9,393.05 for special damages and $5,000 for general damages. Of this sum, Southeastern was ordered to pay $3,256.90[5] and Fidelity was ordered to pay $11,136.15.
Neither insurer seriously contests the amount awarded for special damages and we find the claims of both plaintiffs to be well substantiated by the record. It is the award for general damages that the insurers claim is excessive. After a thorough review of the record we are convinced the trial court did not abuse its discretion in either award.
The evidence shows Shellie Seals had injured his back in an auto accident in 1971 and had been treated for back and kidney problems by Dr. E.B. Scoggins, as late as February of 1975. The original back injury had apparently improved to the extent Seals was able to perform manual labor and work at a variety of jobs at the time of the 1976 accident. Immediately following the 1976 accident he was diagnosed as having a degenerative disc disease or a herniated disc. Dr. Scoggins stated Seals would never be able to perform heavy labor again and would probably require surgery.
Because of the continuing back pain Seals sought treatment from Dr. Edward Connelly, *657 a neurosurgeon at Oshsner Clinic in New Orleans. Dr. Connelly testified by deposition he had diagnosed Mr. Seals as having a mild herniation of the "L4 and L5" discs. Dr. Connelly stated although there can be several causes for such a condition he had no reason to question Mr. Seals' statements that the pain occurred immediately after the 1976 auto accident. His discomfort from the back injury was significant enough to cause him to be unable to work from April 1976 to September 1977. We find this evidence supports the trial court's award for $15,000 for pain and suffering. Although Mr. Seals may have injured his back previously, the back was in a greatly improved condition at the time of the accident. It is well settled a defendant is responsible for aggravation of a plaintiff's pre-existing condition. Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
Dr. Thomas Dewey examined Sylvester Harry shortly after the accident and diagnosed him as having a lumbrosacral spine sprain. This diagnosis was confirmed by Dr. Robert Fleming, an orthopedic surgeon. Mr. Harry testified he attempted to return to work in July of 1976, upon Dr. Fleming's suggestion, but was unable to do so. He continued to be treated by Dr. Fleming and returned to work in December of 1976.
In conclusion we do not find the awards of $15,000 and $5,000 to Mr. Seals and Mr. Harry, respectively, to be excessive and therefore we will not disturb the trial court's judgment.
In his brief on remand, plaintiff, Sylvester Harry, argues his award is not excessive. Plaintiff, Shellie Seals, raises several issues concerning his award which will be discussed below.
First, Mr. Seals contends he is entitled to recover for profits he would have earned in the construction business. We agree with the trial court there was not one iota of proof, other than plaintiff's own self-serving testimony, concerning these alleged "lost contracts." The other plaintiff, Mr. Sylvester Harry, stated he paid Mr. Seals $2,300 for a job and would have paid him $200 more had the work been completed. The trial court accordingly awarded Mr. Seals $200. Plaintiff simply failed to prove he would in fact have earned a certain amount of income from any other contracts.
The trial judge allowed Mr. Seals to recover his weekly wages from the Full Value I.G.A. store for a period from April 26, 1976 until September of 1977. Testimony indicated the store burned in September of 1977 and never reopened. Plaintiff contends he should not be limited to this period of disability, i.e., he argues it is immaterial the store burned in September. We agree with the trial court and note it would be an unjust enrichment for plaintiff to recover for weekly wages which he would not have been receiving in any event.
Plaintiff next contends he should be entitled to recover for loss of wages and commissions he would have received from Seals Distributors. Archie Roy Seals, Shellie's brother and president of Seals Distributors, testified Shellie had earned an average of $137 a week for the eight weeks prior to the accident.
We agree with the trial court's comments (as reflected in the transcript) that plaintiff failed to prove he would in fact have been able to earn money from this job had he not been disabled. In other words, plaintiff cannot simply show he earned a certain amount on his route and then expect to be awarded this amount for his entire period of disability. He must show the work would have been available to him if he had been able to perform it. One method of doing so would be to show the route was continued by some other person during Seals' absence. His bare allegation that he would have earned a certain amount is simply not sufficient.
Mr. Seals argues he should be awarded a sum for the property damage sustained to his truck, even though his brother repaired it without charge. The record does not contain any evidence as to the extent of the truck's damage or as to how much it would have cost to repair had Mr. Seals been charged for the work.
*658 Therefore, the court was correct in disallowing recovery for this item.
Mr. Seals next contends he should be able to recover damages for a period of partial disability. The record does not contain adequate evidence to support this claim and any attempt to make an award for this item would be based upon pure speculation.

Southern Farm's Reimbursement
The third issue raised by appellants, Morris and Southeastern, is Southern Farm's right to be reimbursed for medical payments made on behalf of plaintiffs. The trial court rendered judgment in favor of Southern Farm and against Morris and Southeastern for a total of $2,852.10 ($1,109.00 for Seals and $1,743.10 for Harry). On appeal, this court found Morris to be free of liability and reversed the judgment of the trial court. The two plaintiffs were granted writs by the Supreme Court. No other party sought writs, therefore as to those parties the judgment of the Court of Appeal became final when the various delays had run and there had been no application for a writ of certiorari on behalf of these parties. La.Code Civ.P. art. 2166.
It is a long standing policy of the Supreme Court to refuse to amend a judgment to benefit a party who did not apply for certiorari. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980), rehearing denied 1980; Gulotta v. Cutshaw, 283 So.2d 482 (La.1973). Although in the present case the Supreme Court ordered the judgment of the trial court be reinstated, the reinstatement affected necessarily only those portions of the trial court judgment which remained viable. In that respect, our previous judgment denying recovery to Southern Farm had become final and was not modified so as to benefit a party who did not apply for writs.

CONCLUSION
In conclusion, we find coverage under the Fidelity policy; we find the amount of the awards were well within the discretion of the trial court and we find Southern Farm is not entitled to be reimbursed for the medical expenses. Since the Southern Farm reimbursement is no longer an issue, the full policy limits ($5,000 per person) are available from the primary Southeastern policy and, since Eugene Morris has only $5,000 of insurance available for each plaintiff in the primary policy, the remainder of the judgments must be satisfied from the excess coverage provided by the Fidelity policy.
In Docket Number 13,405, we now render judgment in favor of Shellie Seals and against defendant, Eugene Morris and Southeastern Fidelity Insurance Company, in solido, for the sum of $5,000, plus legal interest thereon from date of judicial demand until paid. We further render judgment in favor of plaintiff, Shellie Seals, and against defendants, United States Fidelity & Guaranty Company and Fidelity & Guaranty Insurance Underwriters, Inc., for the sum of $17,988.64, plus legal interest thereon from date of judicial demand until paid.
In Docket Number 13,406, we now render judgment in favor of plaintiff, Sylvester Harry, and against defendants, Eugene Morris and Southeastern Fidelity Insurance Company, in solido, for the sum of $5,000, plus legal interest thereon from date of judicial demand until paid. We further render judgment in favor of plaintiff, Sylvester Harry, and against defendants, United States Fidelity & Guaranty Company and Fidelity & Guaranty Insurance Underwriters, Inc., for the sum of $9,393.05, plus legal interest thereon from date of judicial demand until paid.
Since insurance carried by the primary and excess insurers of Eugene Morris is more than adequate to satisfy the judgments herein, judgment is rendered in favor of defendant, Southern Farm Bureau Casualty Insurance Company, as the uninsured motorist insurer, rejecting all claims against Southern Farm Bureau Casualty Insurance Company.
All costs of court are to be paid by Morris, Southeastern and Fidelity.
AFFIRMED IN PART; REVERSED IN PART; RENDERED.
*659 LOTTINGER, J., dissents only insofar as to the refusal to award damages. See Folse v. Fakouri, 371 So.2d 1120 (La.1979).
NOTES
[1] For a more detailed rendition of the facts see Seals v. Morris, 387 So.2d 1220 (La.App. 1st Cir.1980); and Seals v. Morris, 410 So.2d 715 (La.1981), on rehearing 1982.
[2] The insurers will be referred to as Southeastern, USF & G, Fidelity, and Southern Farm, respectively.
[3] Various other third party demands were filed but none here concern us.
[4] The Southeastern policy had limits of $5,000. The first $1,109.00 was used to reimburse Southern Farm for Seals' medical expenses.
[5] Again, the first $1,743.10 was used to repay Southern Farm.