**AMERICAN MOTORISTS INSURANCE COMPANY and Design Professionals Insurance Company, Appellants,**

v.

**REPUBLIC INSURANCE COMPANY, Appellee.**

**No. S–4268.**

Supreme Court of Alaska.

May 8, 1992.

Jerome H. Juday, Atkinson, Conway & Gagnon, Anchorage, for appellants.

Kermit E. Barker, Jr., Terisia K. Chleborad, Lane, Powell, Spears & Lubersky, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Justice.

## I.  INTRODUCTION

Appellants, American Motorists Insurance Company and Design Professionals Insurance Company (American), sued Re-

public Insurance Company (Republic) seeking a pro rata recovery of legal fees incurred by American in defense of a lawsuit brought against an architectural firm that both American and Republic insured.  The trial court granted summary judgment for Republic and denied summary judgment for American.  American appeals.

This suit involves the construction of the term "professional services" in a professional liability insurance policy.  The principal issue is whether an architect's competitive bid for a contract to design school buildings is a "professional service," and thus, covered under the insurance policy.  We hold that it is.

## II.  FACTS

In early 1982, the Anchorage architectural firm of ECI/Hyer bid to design three schools for the Anchorage School District.  ECI/Hyer's bid consisted of two booklets totalling approximately one hundred and sixty pages.  The booklets included, among other things, the following: an accelerated project schedule, drawings, a project approach, a project team list detailing team member assignments, an estimate of the design fee, an estimate of manpower requirements, a selection of subconsultants, an extensive description of ECI/Hyer's experience, and the particulars of designs ECI/Hyer had created for other projects.  In April 1982 the School District awarded the contract to ECI/Hyer.

In June 1984 Lane + Knorr + Plunkett (LKP), another architectural firm that bid on the school designs, sued ECI/Hyer for misrepresentation.    Specifically,    LKP claimed that ECI/Hyer:

> misrepresented to the school district that it had certain employees and experience, when in fact it did not.  Had the School Board known the true facts, it would not have awarded the contract to ECI–Hyer, Inc., but instead would have awarded it to LKP.

In December 1986 LKP amended its complaint.[1]  The amended complaint specifically alleged, among other things, "negligent

---

1. Actually, Michael E. Plunkett, a principal in LKP, filed the amended complaint "on his own

behalf and on behalf of his partnership property interest in" LKP.  For ease of discussion, we

and/or fraudulent misrepresentation." The amended complaint also expanded LKP's claim to include, among other things, defamation, injurious falsehood and business disparagement.

At the time LKP filed its original complaint, ECI/Hyer was insured by Republic. The policy provided coverage on a "claims made" basis and obligated Republic to indemnify and defend ECI/Hyer against any claim for negligence arising out of ECI/Hyer's "rendering or failing to render professional services."[2] ECI/Hyer tendered the defense of LKP's original and amended complaints to Republic.[3] Both times Republic denied coverage and refused to defend. American successfully defended ECI/Hyer.[4]

In January 1989 American filed the present action against Republic seeking a pro rata share of the defense costs that American incurred in the LKP litigation.[5] Both parties moved for summary judgment. The trial court granted summary judgment for Republic reasoning that the mere providing of a bid is not an architectural service and, thus, is not covered under the policy. American appeals claiming:

1. The trial court erred in granting summary judgment for Republic.

2. The trial court erred in not granting summary judgment for American for $130,000.

## III. DISCUSSION

A. *Is a competitive bid a "professional service"?*

■ Republic had a duty to defend ECI/Hyer against LKP's lawsuit if LKP's allegations were within, or potentially within, the ambit of Republic's professional services insurance policy. *O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981). LKP's original and amended complaints alleged claims arising out of ECI/Hyer's competitive bid to design three schools. Thus, the major issue is whether ECI/Hyer's competitive bid is a professional service.

The term "professional services" includes acts:

arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill ... and in determining whether a particular act is a 'professional service' the court must look not to the title or character of the party performing the act, but to the act itself.

7A J. Appleman, *Insurance Law and Practice* § 4504.01 at 309–10. Applying this definition, we conclude that ECI/Hyer's bid is clearly a professional service.

The bid was much more than a price quote. As previously noted, it contained approximately one hundred and sixty pages of information. It included, among other things, an accelerated project schedule, drawings, a project approach, a project team list detailing team member assignments, an estimate of ECI/Hyer's design fee, an estimate of manpower requirements, a selection of subconsultants, an extensive description of ECI/Hyer's experience, and the particulars of designs ECI/

will refer to this complaint as LKP's amended complaint.

2. The declarations section of the policy describes the insured's professional services as: architecture, interior design and planning.

3. ECI/Hyer's policy with Republic contained an "awareness" clause that permitted claims made after the coverage period to relate back to the time ECI/Hyer originally notified Republic about the possible claim. Thus, although LKP filed its amended complaint after the expiration of Republic's policy, the amended complaint related back to the policy period.

4. American provided ECI/Hyer with "occurrence based" comprehensive general liability coverage from January 1, 1982 to January 1, 1983. American had a duty to defend ECI/Hyer because LKP's defamation claim of the second amended complaint alleged an occurrence in 1982. This defense resulted in a jury verdict for ECI/Hyer on all of LKP's claims. LKP appealed, but we dismissed LKP's appeal for want of prosecution. File No. S–2813 (dismissed 12/21/88 pursuant to Alaska Appellate Rule 511.5(a)).

5. American's claim for a pro rata share is independently based on its subrogation rights under its policy with ECI/Hyer and on the equitable doctrine of restitution.

Hyer had created for other projects. As a practical matter, and as a matter of Alaska law, only an architect using his or her specialized knowledge, labor and skills could have prepared the bid. AS 08.48.281 (only registered architects may "offer to practice the profession of architecture"). Thus, the bid is fairly included within the term "professional service." Since the bid formed the basis of LKP's action, Republic breached its duty to defend and is liable to American for its share of the defense costs.

Our decision is supported by *Sachs v. St. Paul Fire & Marine Ins. Co.*, 303 F.Supp. 1339 (D.D.C.1969) which held that a claim premised on a professional's undertaking to represent a client triggers the insurance company's duty to defend. In *Sachs*, Sachs, an attorney, was sued by Fitzgerald, another attorney, for wrongfully interfering with Fitzgerald's retainer contract with a client. Sachs' professional liability carrier refused to defend Sachs, and he sued the carrier for declaratory relief. The court held that the carrier breached its duty to defend, reasoning that Sachs "was acting in his professional capacity as an attorney when the incidents complained of occurred. Indeed, [Sachs'] undertaking to represent a client Fitzgerald claimed was his—the crux of the interference with contract complaint—could only be done by an attorney pursuing his profession." *Id.* at 1340–1341. Similarly, the crux of LKP's claim relates to ECI/Hyer's attempt to represent a client. As in *Sachs*, this could only be

done by a professional pursuing his or her profession.

In the present case, the trial court relied on two California appellate court cases, *Blumberg v. Guaranty Ins. Co.*, 192 Cal. App.3d 1286, 238 Cal.Rptr. 36 (1987) and *Transamerica Ins. Co. v. Sayble*, 193 Cal. App.3d 1562, 239 Cal.Rptr. 201 (1987), in ruling that a competitive bid is not a professional service. These cases are inapposite. Both involved disputes between law partners and neither involved the interaction with actual or potential clients.[6]

■■■ In its brief and at oral argument, Republic urges this court to narrowly construe the term "professional services." Specifically, Republic attempts to distinguish between claims arising from *the preparation* to render professional services and claims arising from *the rendering* of professional services. Since LKP's claim arose from ECI/Hyer's attempt to procure a contract, Republic argues that such action is merely preparatory and is not based on ECI/Hyer's rendering of professional services. However, it is settled law that ambiguous terms in insurance policies will be given that construction which favors coverage, in this case the construction of "professional services" which includes bid preparation and submission. *Starry v. Horace Mann Ins. Co.*, 649 P.2d 937, 939 (Alaska 1982). If Republic wishes to limit coverage to post-bidding activity, then it should provide an explicit limitation in its policy.[7] Republic's policy contained

---

6. In *Blumberg*, Blumberg and his law partner, Zommick, dissolved their law partnership. Zommick sued Blumberg for misrepresentation during the dissolution. *Blumberg*, 238 Cal.Rptr. at 39. The *Blumberg* court held that Blumberg's "professional services" insurance carrier had no duty to defend because:

    1. Blumberg was not rendering professional services; and

    2. The insurance policy explicitly excluded conduct in connection with "any business enterprise."

*Id.* at 39–40.

In *Transamerica*, Raphael sued his law partner, Sayble, for breach of contract and dissolution. Citing *Blumberg*, the *Transamerica* court held that Sayble's "professional services" carriers had no duty to defend because Raphael's claims arose from business disputes within the law firm. *Transamerica*, 239 Cal.Rptr. at 205.

7. Additionally, we note that even if such a limitation existed, LKP's amended complaint would have nevertheless triggered Republic's duty to defend. This is because LKP's amended complaint alleged tortious conduct arising from acts that occurred well after ECI/Hyer had completed the bidding process. Specifically, in 1984, approximately two years after the school board awarded ECI/Hyer the contract, the board increased the contract by two more schools. LKP's eleventh count in its amended complaint alleges that this modification resulted from ECI/Hyer's "negligent and or fraudulent misrepresentation[s]." Thus, LKP's complaint is not limited to ECI/Hyer's conduct in the competitive bidding process. It also includes ECI/Hyer's conduct in modifying the school design contract. This post-bidding conduct independently triggered Republic's duty to defend.

no such limitation. Thus, we reverse the trial court and hold that Republic breached its duty to defend.

### B. Should the trial court have granted summary judgment to American in the amount of $130,000?

■ American argues that Republic should pay all of ECI/Hyer's litigation costs incurred before LKP filed its amended complaint and two-thirds of ECI/Hyer's litigation costs incurred after LKP filed its amended complaint. American argues that this amounts to approximately $130,000. Republic responds that the issue of damages should be remanded because it was not decided by the trial court and because there are material issues of fact as to "both the amount and allocation of the damages."[8] As a general rule, we do not decide issues until the trial court has ruled on them, and a dispute exists as to the correctness of that ruling. *See O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1175 n. 7 (Alaska 1981) (appellate courts should not ordinarily decide issues not considered by the trial court). We adhere to this practice here and remand the issue of damages for the trial court to decide.

## IV. CONCLUSION

We reverse the trial court and hold that competitive bidding is part of an architect's professional services under Republic's professional liability insurance policy. We remand to the trial court to determine the amount of American's damages.

---

8. The trial court did not need to reach these issues because it ruled that Republic did not have a duty to defend ECI/Hyer.