hWICKER, Judge. .
Julia McCarthy, wife of/and James McCarthy, filed a chiropractic malpractice claim against William Berman, D.C., Berman’s insurer National Mutual Insurance Company and Berman’s alleged insurer, Allstate. Allstate denied coverage for the alleged acts of malpractice and filed a motion for summary judgment. Berman joined with the plaintiffs in opposing Allstate’s motion for summary judgment. The trial judge denied the motion on the basis the insurance policy was ambiguous regarding coverage and subject to more than one interpretation. She stated she felt summary judgment was inappropriate since there were genuine issues of material fact for trial. Allstate filed this writ application urging that as a matter of law it is entitled to summary judgment on the basis that the exclusion in the contract is clear and unambiguous.
Writs were previously denied in Julia McCarthy, wife of/and James McCarthy v. William Berman, D.C., his insurer, National Chiropractic Mutual Insurer Company and his excess insurer, Allstate Insurance Company, 94-778 (La.App. 5th Cir. 10/24/94). The Supreme Court subsequently remanded the case for briefing, argument and opinion in Julia McCarthy, wife of James McCarthy v. William Berman, D.C., his insurer, National Chiropractic Mutual Insurance Company and his excess insurer, Allstate Insurance Company, 94-2856 (La. 2/3/95), 649 So.2d 396.[1] On remand, we deny the writ application.
The insurance policy at issue is a business liability policy which provides for comprehen *719 sive liability of $2,000,000.00. The named insured is Dr. William S. Berman DBA Ber-man Chiropractic. The policy indicates two types of coverages: (A) Business Property and (B) Business Liability. It is Coverage B, Business Liability, which is in dispute.
Coverage B — Business Liability, Part One — Comprehensive Liability provides:
Liabilities Covered
We will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an accidental event, personal injury or advertising injury that occurs while this policy is in effect ...
Included in “Part One-Comprehensive Liability” is the following provision:
Incidental Medical Malpractice Liability:
We will also pay on behalf of persons insured all sums which they become legally obligated to pay for bodily injury arising out of the rendering or failure to render the following services while the policy is in effect:
1. Medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection with these services, or
|⅞2. The furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.
However, this coverage does not apply to persons insured if they are engaged in the business or occupation of providing any of the services described in (1) and (2) above.
Under the section, “Liabilities Covered” the policy broadly covers “all sums [which Berman would] become legally obligated to pay as damages arising out of an accidental event, [or] personal injury ...” The plaintiffs alleged Julia McCarthy was treated by Berman for cervical injuries. They alleged the following:
Berman ... performed a radical procedure which involved placing a large towel about the head and chin of your petitioner and violently jerking the head of your petitioner.
They further alleged Julia McCarthy was injured by the “towel jerk method,” a non-acceptable and non-recommended chiropractic procedure.
Thus, the broad language under “Liabilities Covered” includes the negligent acts complained of.
However, under “Incidental Medical Malpractice Liability” the policy reads: “We will also pay on behalf of persons injured all sums” arising out of the rendering or failure to render medical service or treatment [emphasis added]. This section implies that “Incidental Medical Malpractice Liability” is an additional type of liability covered and not one which is covered under the broad statement following “Liabilities Covered.”
However, the policy language in “Liabilities Covered” is sufficiently broad enough to encompass a negligence claim arising from medical malpractice.
The “Incidental Medical Malpractice Liability” section attempts to exclude from coverage those engaged in the business or occupation providing medical services. Thus, “Incidental Medical Malpractice” would seemingly be excluded in Berman’s case since he is engaged in the occupation of providing medical services. ThisJjattempted exclusion, however, only applies to “Incidental Medical Malpractice Liability”; it does not otherwise limit the broad coverage under “Liabilities Covered.” Additionally, the policy does not contain a definition of “Incidental Medical Malpractice.” In its brief, Allstate argues “Incidental Medical Malpractice Liability” covers “non-health care businesses” for whom an act of medical malpractice could be considered “incidental”. However, the policy does not give such an explanation.[2]
*720 IsAdditionally, the policy contains another exclusion in section 21 as follows:
21. Any accidental event, personal injury, or advertising injury, arising out of the rendering of or the failure to render scientific or professional services, or consulting business or technical services. This exclusion does not apply to Incidental Medical Malpractice liability.
Since Berman renders professional services this exclusion would seemingly apply to him. The implication is that this section effectively deletes the broad coverage contained under “Liabilities Covered” leaving Berman with no business liability coverage. However, section 21 does not explicitly delete or amend the broad coverage section.
In Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983) the court held at 1090: “exclusionary clauses must be interpreted strictly in the insured’s favor. Implication will simply not suffice.”
The trial judge was correct in denying the motion for summary judgment as a matter of law.[3] An exclusion by implication is insufficient. Borden, supra. Additionally, the instant case is similar to the case of Seals v. Morris, 423 So.2d 652 (La.App. 1st Cir.1982) in which the court found insurance coverage when a purported exclusion attempted to negate coverage provided in the policy. That court held at 656:
Simply stated, coverage can not be provided by the right hand and then be excluded by the left hand. A policy can not in one instance declare there is express coverage and in a second provision declare effectually there is not coverage. Cf. Credeur v. Luke, 368 So.2d 1030 (La.1979); McGuire v. Smith, 370 So.2d 895 (La.App. 1st Cir. 1979).
Accordingly, for the reasons stated, the writ application is denied at relator’s cost.
WRIT DENIED.

. On March 22, 1995 plaintiffs/respondents filed a motion to supplement the record in this court with newly discovered evidence. This court issued an order denying the motion on March 23, 1995 stating:
This court has no jurisdiction to receive new evidence. Uniform Rules-Courts of Appeal, Rule 1-3, Davis v. St. Jude Medical Center, Inc., 94-353 (La.App. 5th Cir. 10/25/94); 645 So.2d 771; Sutton v. Montegut, 544 So.2d 1181 (La.App. 5th Cir. 1989).
On March 22, 1995 plaintiffs/respondents filed a supplemental brief arguing the writ was properly denied in view of newly discovered evidence. Once again we decline to consider new evidence for the above reasons.

. Furthermore, such a definition would be inconsistent with the following provisions of the Medical Malpractice Act: La.R.S. 40:1299.41(A) and (A)(8). 12.99:41(A) provides:
A. As used in this Part:
(1) "Health care provider" means a person, partnership, corporation, facility, or institution licensed by this state to provide health care or professional services as a physician, hospital, community blood center, tissue bank, dentist, registered or licensed practical nurse, ambulance service under circumstances in which the provisions of R.S. 40:1299.39 are not applicable, certified reg *720 istered nurse anesthetist, nurse midwife, licensed midwife, pharmacist, optometrist, podiatrist, chiropractor, physical therapist, occupational therapist, psychologist, or any nonprofit facility considered tax-exempt under Section 501(c)(3), Internal Revenue Code, pursuant to 26 U.S.C.A. Sec. 501(c)(3), for the diagnosis and treatment of cancer or cancer-related diseases, whether or not such a facility is required to be licensed by this state, or any professional corporation a health care provider is authorized to form under the provisions of Title 12 of the Louisiana Revised Statutes of 1950, or an officer, employee or agent thereof acting in the course and scope of his employment.
1299:41(A)(8) provides:
(8) "Malpractice” means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient.
Since medical malpractice is defined as an act committed by a health care provider then a forti-ori it is only a health care provider who can commit “incidental medical malpractice” as well. By its very nature a “non-health care business” would not meet the definitional criteria set forth in the Medical Malpractice Act.

. We disagree with the trial judge’s reasoning that there are genuine issues of material fact remaining.